**IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ANGEL GOMEZ, ) | |
| ) | |
| Plaintiff, ) | CASE NO. _____ |
| ) | |
| v. ) | JUDGE |
| ) | |
| CHICAGO POLICE OFFICER JOHN HALLORAN, ) | |
| STAR #20453; CHICAGO POLICE OFFICER ) | JURY TRIAL DEMANDED |
| JAMES O'BRIEN, STAR #20466; CHICAGO ) | |
| POLICE OFFICER KRISTI BATTALINI, ) | |
| STAR #20331; CHICAGO POLICE OFFICER ) | |
| J. DOWLING, STAR #21094; CHICAGO POLICE ) | |
| OFFICER K.M. ELMER, STAR #17681; CHICAGO ) | |
| POLICE OFFICER M.E. EVANS, STAR#7946; and ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Angel Gomez, by and through his undersigned attorneys, respectfully submits the following Complaint against Chicago Police Officer John Halloran, Star#20453; Chicago Police Officer James O'Brien, Star#20466; Chicago Police Officer Kristi Battalini, Star#20331; Chicago Police Officer J. Dowling, Star #21094; Chicago Police Officer K.M. Elmer, Star #17681; Chicago Police Officer M.E. Evans, Star #7946; and the City of Chicago, and alleges and states as follows:

### INTRODUCTION

1. Plaintiff, Angel Gomez ("Mr. Gomez"), has spent almost two years in custody defending against false charges in State court as a result of Defendants' fabricated allegations and charges. He brings this action to remedy the violation of his rights and to assert claims under Federal and Illinois law.

## PARTIES

2. At all relevant times, Mr. Gomez was a resident of Cook County, Illinois. Mr. Gomez was only 18 years old when he was arrested by the Chicago Police Department ("CPD").

3. At all relevant times, Defendant, CPD Officer John Halloran ("Halloran"), was a resident of Cook County, Illinois.

4. At all relevant times, Defendant, CPD Officer James O'Brien ("O'Brien"), was a resident of Cook County, Illinois.

5. At all relevant times, Defendant, CPD Officer Kristi Battalini ("Battalini"), was a resident of Cook County, Illinois.

6. At all relevant times, Defendant, CPD Officer J. Dowling, Star #21094 ("Dowling"), was a resident of Cook County, Illinois.

7. At all relevant times, Defendant, CPD Officer K.M. Elmer, Star #17681 ("Elmer"), was a resident of Cook County, Illinois.

8. At all relevant times, CPD Officer M.E. Evans, Star #7946 ("Evans"), was a resident of Cook County, Illinois.

9. Defendant, City of Chicago ("the City"), is a municipal corporation in Cook County, Illinois.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over this matter, and venue in this District is proper because each of the individual Defendants resides in this District; the City is a municipal corporation that, at all relevant times, was doing and transacting business in this District, including by way of employing the individual Defendants; and the events and omissions giving rise to Mr. Gomez's claims all occurred in this District. As set forth below, Mr. Gomez

brings several Counts under Federal law. In addition, this Court has supplemental jurisdiction over Mr. Gomez's State law claims because they arise out of the same common nucleus of operative facts as his Federal law claims.

## FACTUAL BACKGROUND

11. On or about May 3, 2017, two undercover CPD Officers were shot and severely wounded in the line of duty by two individuals who were driving in a 2003 Chrysler Town & County van (hereinafter the "May 3, 2017 shooting"). That shooting took place at 1557 W. 43rd Street in Chicago, Illinois (i.e., near 43rd Street and Ashland Avenue), at approximately 9:05 p.m.

12. Mr. Gomez was **not** in that van at any time on the date of the May 3, 2017 shooting, nor at any other relevant time.

13. Mr. Gomez was **not** involved in, and did not participate in, the May 3, 2017 shooting in any way whatsoever – nor did he have any knowledge that it was going to take place.

14. Mr. Gomez was at/around his home, located at 4746 S. Throop Street in Chicago, at the time of the May 3, 2017 shooting.

15. Extensive and detailed forensic evidence gathered and analyzed by and for the CPD and the Cook County State's Attorney's Office fully corroborates and demonstrates that Mr. Gomez was not only **not** present at the time of the shooting, but that he had no involvement in, and nothing to do with, the May 3, 2017 shooting in any way, shape, or form. He is completely and totally innocent of the attempted murder charges and any other charges arising out of the May 3, 2017 shooting.

16. The forensic evidence that completely exculpates Mr. Gomez includes, *inter alia*: DNA evidence; fingerprint analysis; security and surveillance camera footage from numerous nearby businesses; Chicago Transit Authority ("CTA") bus security camera footage; cell phone

records; cell phone tower evidence; gunshot residue analysis; text messages; FBI cell phone analysis; and other forensic evidence.

17. Nonetheless, Mr. Gomez has been charged in the May 3, 2017 shooting, and thus incarcerated at all times since May 5, 2017. Due to the nature of the false charges against him, Mr. Gomez is classified in the Cook County Jail as an "H.R.M." inmate (i.e., high risk movement). As a result, he has been and must be shackled, handcuffed, and chained for all Court appearances and attorney visits.

18. Mr. Gomez was arrested at his job on May 5, 2017, at approximately 11:00 a.m. He was taken into custody at 4201 N. Lincoln Avenue in Chicago, after being contacted on his cell phone and asked to meet with the CPD.

19. At that time, Mr. Gomez was gainfully employed as a landscaper at a landscaping company. After being contacted by CPD, Mr. Gomez voluntarily told CPD where he was conducting landscaping work, and CPD came out to meet him.

20. Upon meeting Mr. Gomez at 4201 N. Lincoln, CPD Officers Dowling, Elmer, and Evans immediately arrested and handcuffed Mr. Gomez and placed him in a squad car.

21. CPD Officers Dowling, Elmer, and Evans told Mr. Gomez that they wanted to know what Mr. Gomez knew about the May 3, 2017 shooting.

22. Mr. Gomez was then transported to Area Central, located at 5151 S. Wentworth Avenue in Chicago, to be questioned by a team of Detectives.

23. Mr. Gomez was placed in interview room number 4 (i.e., a locked cell) at Area Central at approximately 11:49 a.m. and handcuffed to a bench.

24. After being placed in handcuffs in that locked interview room, CPD Officers Halloran, O'Brien and Battalini began a concerted effort, which lasted for hours and hours, to

force, threaten, intimidate and overcome Mr. Gomez's free will and make an 18-year-old young man involuntarily "confess" to a crime that he had absolutely no involvement in.

25. After Mr. Gomez was locked in interview room number 4 for approximately 5 ½ hours, CPD Officers O'Brien and Battalini - with their guns holstered - began questioning Mr. Gomez. O'Brien and Battalini intentionally lied to Mr. Gomez that several people had allegedly identified him as the driver of the 2003 Town & Country.

26. Battalini and O'Brien intentionally lied to Mr. Gomez that they were able to see Mr. Gomez on video driving the 2003 Town & Country van.

27. In response, Mr. Gomez steadfastly maintained that he had nothing to do with the May 3, 2017 shooting, and that if the police had videos of the driver then they must be able to see that he was *not* the driver.

28. Mr. Gomez voluntarily consented to a buccal swab for DNA, and also voluntarily provided the password to his I-Phone. With respect to those requests, Mr. Gomez told Battalini and O'Brien "whatever you have to do."

29. Despite Mr. Gomez's repeated and persistent claims of innocence, his cooperation with a DNA swab, his providing of his I-Phone password, and there being absolutely no physical evidence that tied Mr. Gomez to the May 3, 2017 shooting, Halloran, O'Brien, and Battalini continued to engage in a concerted plan to coerce, force and have Mr. Gomez involuntary and falsely "confess."

30. After Mr. Gomez had been detained in his cell for approximately 11 hours, Halloran and O'Brien came back into the cell.

31. For well over twelve hours, Mr. Gomez had insisted, pleaded, and exclaimed to all Officers and specifically to his interrogators, Halloran, O'Brien, and Battalini, that he had no involvement in any way with the May 3, 2017 shooting.

32. Nevertheless, Halloran, O'Brien, and Battalini continued to engage in a coercive and intimidating campaign to force Mr. Gomez to falsely "confess."

33. Specifically, after 11 hours in the cell, Halloran and O'Brien came into the cell with their guns holstered.

34. Halloran intentionally falsely maintained that 7 specific individuals, whom Mr. Gomez knew, had identified Mr. Gomez as the driver of 2003 Chrysler Town & County. In fact, Halloran and O'Brien showed Mr. Gomez pictures of the 7 individuals who allegedly identified Mr. Gomez as the driver of the Chrysler Town & Country.

35. Halloran and O'Brien intentionally falsely alleged to Mr. Gomez that all 7 of those individuals were in separate rooms when they had each identified Mr. Gomez as the driver. In fact, none of those 7 individuals had ever identified Mr. Gomez as the driver. Those intentionally false statements were part of Defendants' concerted efforts to force Mr. Gomez to falsely "confess" to a crime that he knew nothing about and had nothing to do with.

36. Halloran and O'Brien also intentionally falsely alleged that they had in their possession a video showing that Mr. Gomez was the driver of the 2003 Town & Country van. This statement was also patently false. There had not then existed, and still never exists, a video of Mr. Gomez driving the 2003 Town & Country. Mr. Gomez never drove, and was never inside, the 2003 Town & Country. These statements were part of Defendants' intentional and concerted efforts to force Mr. Gomez to falsely "confess" to a crime that he knew nothing about and had nothing to do with.

6

37. Halloran and O'Brien also intentionally falsely claimed to Mr. Gomez that an individual named "A.D." (real name withheld) had already testified before a Cook County Grand Jury that Mr. Gomez was the driver of the 2003 Town & Country. That was another patently intentionally false statement. A.D. had in fact testified before a Cook County Grand Jury, but he had *not* implicated Mr. Gomez in the May 3, 2017 shooting. Defendants' intentionally false statements to the contrary were part of Defendants' concerted efforts to force Mr. Gomez to falsely "confess" to a crime that he knew nothing about and had nothing to do with.

38. Further, despite there being no evidence at all of Mr. Gomez's involvement in the May 3, 2017 shooting, Defendants intentionally falsely told Mr. Gomez that he would be going to prison for a minimum of 62 years. Defendants intentionally falsely told Mr. Gomez that he would not be getting out of jail, and that he would spend almost his entire life at either Stateville, Pontiac, or Menard prisons. These intentionally false statements were further part of Defendants' concerted efforts to force Mr. Gomez to falsely "confess" to a crime that he knew nothing about and had nothing to do with.

39. After 12 hours of these coercive, intimidating and abusive mental tactics, Mr. Gomez told Halloran and Detective O'Brien, "What do I have to do? What do you want me to tell you guys?"

40. Eventually, after approximately 12 to 13 hours of these coercive, intimidating and abusive mental tactics, Mr. Gomez made certain involuntary statements that purported to incriminate himself in the May 3, 2017 shooting.

41. Since that time, Mr. Gomez has been detained, without bond, and has been forced to remain in the custody of the Cook County Department of Corrections, pending the outcome of his pending State Court criminal proceeding.

7

42. Mr. Gomez has been required to appear in Cook County Criminal Court on numerous occasions while in the custody of the Cook County Department of Corrections – for crimes for which he has been charged but which he had absolutely nothing to do with.

**COUNT I - SECTION 1983 - False Arrest And False Imprisonment (Against All of the Individual Defendants)**

43. Mr. Gomez repeats and realleges paragraphs 1 through 42 above, as though fully set forth herein, as paragraph 43.

44. Defendants did not have probable cause to arrest Mr. Gomez.

45. Once they arrested Mr. Gomez, the individual Defendants held him and questioned him in violation of his Due Process rights guaranteed to him though the 14th Amendment to the United State Constitution.

46. Through force, intimidation, coercion, threats, fear, manipulation and misrepresentations, the individual Defendants obtained a false, coerced, and incriminating statement from Mr. Gomez.

47. Even after obtaining clearly exculpatory evidence, the individual Defendants continued to hold and question Mr. Gomez.

48. The individual Defendants concealed evidence and/or failed to process or further investigate any evidence that would have exonerated, and which will exonerate, Mr. Gomez.

49. Mr. Gomez has continued to be falsely imprisoned to this date.

**WHEREFORE**, Plaintiff, Angel Gomez, by and through his undersigned counsel, respectfully requests the entry of an Order granting judgment in his favor and against the individual Defendants on Count I of his Complaint, awarding him all compensatory damages to which he is entitled to recover, as well as costs and punitive damages, along with damages for the loss of his liberty, and for the severe mental anguish and emotional distress he has suffered

and will continue to suffer, and all such other damages and further relief as the fact finders deems just and proper, and for his reasonable attorneys' fees.

### COUNT II - SECTION 1983 – Fifth Amendment Violation (Against Individual Defendants Halloran, O'Brien, And Battalini)

50. Mr. Gomez realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 42 above, as paragraph 50 of Count II.

51. Individually, and in concert, Defendants Halloran, O'Brien, and Battalini intentionally deprived Mr. Gomez of his Fifth Amendment rights, guaranteed to him under the United States Constitution, to be free from forced incrimination by and through force, coercion, intimidation, threats, fear, manipulation, and misrepresentations.

52. In violation of those rights, those Defendants obtained a coerced incriminating statement from Mr. Gomez.

53. Those acts committed by those individual Defendants were done wantonly, intentionally, and with knowledge that the acts were in violation of Mr. Gomez's Constitutional rights.

54. As a direct and proximate result of Defendants Halloran, O'Brien, and Battalini's intentional violations of Mr. Gomez's Constitutional rights, he has suffered and will continue to suffer humiliation, fear, pain, suffering, emotional distress, monetary loss and expense, and other damages.

**WHEREFORE**, Plaintiff, Angel Gomez, by and through his undersigned counsel, respectfully requests the entry of an Order granting judgment in his favor and against the individual Defendants identified above on Count II of his Complaint, awarding him all compensatory damages to which he is entitled to recover, costs, punitive damages, along with

damages for the loss of his liberty, and for the severe mental anguish and emotional distress he has suffered and will continue to suffer, and all such other damages and further relief as the fact finders deems just and proper, and for his reasonable attorneys' fees.

### COUNT III - Section 1983 - Failure To Intervene (Against All of the Individual Defendants

55. Mr. Gomez realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 42 above, as paragraph 55 of Count III.

56. In the manner described above, for all of the Constitutional violations suffered by Mr. Gomez, one or more of the individual Defendants stood by without intervening to prevent the misconduct alleged.

56. The individual Defendants had a duty to intervene in any and all unlawful conduct.

57. Further, the individual Defendants had a reasonable opportunity to prevent the harm to Mr. Gomez, but failed to do so.

58. The individual Defendants' conduct was intentional, willful and wanton.

59. As a direct and proximate result of the individual Defendants' failure to intervene to prevent such violations of Mr. Gomez's Constitutional rights, he has and will continue to suffer humiliation, fear, pain, suffering, emotional distress, and other monetary losses and expenses.

**WHEREFORE**, Plaintiff, Angel Gomez, by and through his undersigned counsel, respectfully requests the entry of judgment in his favor and against the individual Defendants named above on Count III of his Complaint, awarding him all compensatory damages to which he is entitled to recover, costs, punitive damages, along with damages for the loss of his liberty, and severe mental anguish and emotional distress he has suffered and will continue to suffer, and

all such other damages and further relief as the fact finders deems just and proper, and for his reasonable attorneys' fees.

### COUNT IV - State Law Conspiracy (Against Individual Defendants Halloran, O'Brien, Battalini and City of Chicago)

60. Mr. Gomez realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 42 above, as paragraph 60 of Count IV.

61. Defendants Halloran, O'Brien, and Battalini reached an agreement and conspired with one another to fabricate evidence and falsely institute and continue State criminal proceedings against Mr. Gomez.

62. These Defendants took overt acts in furtherance of their conspiracy, including but not limited to creating false evidence and agreeing to force, intimidate, and coerce Mr. Gomez to make incriminating statements.

63. These Defendants acted with malice, willfulness, and reckless indifference to Mr. Gomez's rights.

64. The City is also liable under the doctrine of *respondeat superior* because Defendants Halloran, O'Brien, and Battalini's actions were committed within the scope of their employment with the City.

65. As a direct and proximate result of Defendants Halloran, O'Brien, and Battalini's misconduct, Mr. Gomez has suffered and will continue to suffer serious and lasting injuries, including but not limited to the loss of his liberty for approximately two years, to-date, and to continue, and severe mental anguish and emotional distress, and he will continue to suffer such damages and other damages.

**WHEREFORE**, Plaintiff, Angel Gomez, by and through his undersigned counsel, respectfully requests the entry of judgment in his favor and against Defendants Halloran,

O'Brien, and Battalini, and Defendant City of Chicago, on Count IV of his Complaint, awarding him all compensatory damages to which he is entitled to recover, costs, punitive damages, along with damages for the loss of his liberty, and severe mental anguish and emotional distress he has suffered and will continue to suffer, and all such damages and further relief as the fact finders deems just and proper.

### COUNT V - Intentional Infliction of Emotional Distress (Against Defendants Halloran, O'Brien, Battalini, and City of Chicago)

66. Mr. Gomez realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 42 above, as paragraph 66 of Count V.

67. The actions of Defendants Halloran, O'Brien, and Battalini in forcing, intimidating, and coercing Mr. Gomez to make false incriminating statements, and in fabricating evidence against Mr. Gomez, constitutes extreme and outrageous conduct, and those actions have been undertaken and continued with malice, willfulness, and reckless indifference to Mr. Gomez's rights.

68. As a direct and proximate result of the misconduct perpetrated by Defendants Halloran, O'Brien, and Battalini, Mr. Gomez has suffered and will continue to suffer severe mental anguish and emotional distress.

69. The City of Chicago is also liable under *respondeat superior* because Defendants Halloran, O'Brien, and Battalini's actions were committed within the scope of their employment with the City of Chicago.

**WHEREFORE**, Plaintiff, Angel Gomez, by and through his undersigned counsel, respectfully requests the entry of judgment in his favor and against Defendants Halloran, O'Brien, and Battalini, and Defendant City of Chicago, on Count V of his Complaint, awarding him all compensatory other damages to which he is entitled to recover, costs, punitive damages,

along with damages for the loss of his liberty, and severe mental anguish and emotional distress he has suffered and will continue to suffer, and all such damages and further relief as the fact finders deems just and proper.

### COUNT VI - Indemnification (Against City of Chicago)

70. Mr. Gomez realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 42 above, as paragraph 70 of Count VI.

71. Pursuant to statute, the City is liable for any judgment for compensatory damages against Defendants in this action.

**WHEREFORE**, Plaintiff, Angel Gomez, by and through his undersigned counsel, respectfully requests the entry of judgment in his favor and against Defendant, the City of Chicago, on Count VI of his Complaint, awarding him all compensatory and other damages to which he is entitled to recover, costs, punitive damages, along with damages for the loss of his liberty, and severe mental anguish and emotional distress he has suffered and will continue to suffer, and all such damages and further relief as the fact finders deems just and proper.

### COUNT VII - Respondeat Superior (Against City of Chicago)

72. Mr. Gomez realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 42 above, as paragraph 72 of Count VII.

73. At all relevant times, the Defendant individual Officers were acting within the scope of their employment as agents of the City of Chicago.

74. As a direct and proximate result of the actions of the individual Defendants, Mr. Gomez has and will continue to suffer humiliation, fear, pain, suffering, emotional distress, monetary loss and expense, and other damages.

75. The City is required to indemnify the individual Defendant Officers.

**WHEREFORE**, Plaintiff, Angel Gomez, by and through his undersigned counsel, respectfully requests the entry of judgment in his favor and against Defendant, City of Chicago, on Count VII of his Complaint, awarding him all compensatory and other damages to which he is entitled to recover, costs, punitive damages, along with damages for the loss of his liberty, and severe mental anguish and emotional distress he has suffered and will continue to suffer, and all such damages and further relief as the fact finders deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Date:  May 3, 2019                                     By:  /s/Michael Leonard
                                                                          Counsel for Plaintiff


Michael I. Leonard
**LEONARDMEYER, LLP**
120 N. LaSalle Street
20th Floor
Chicago, IL 60602
(312)380-6559 (direct)
(312)264-0671 (fax)
mleonard@leonardmeyerllp.com